IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MYNECA Y. OJO** and **KAREN ANN CROSBY,** | : Civ. No. 1:20-cv-00661 |
| Plaintiffs, | : |
| v. | : |
| **BREW VINO, LLC et al.,** | : |
| Defendants. | : Judge Sylvia H. Rambo |

**M E M O R A N D U M**

Before the court is Defendants' motion for relief from default. (Docs. 18, 23.) For the reasons set forth below, the motion will be granted.

**I.   BACKGROUND**

This case involves claims by Plaintiffs Myneca Y. Ojo and Karen Ann Crosby—both African American females—that they were discriminated against on the basis of gender and race while playing golf at Grandview Golf Course ("Grandview") located in York County, Pennsylvania. Defendant Brew Vino, LLC is a Pennsylvania limited liability company that owns and operates Grandview and Defendants Marc Bower, Steve Chronister, Jordan Lyle Chronister, Brian Polechek, and John Doe were employees or managers of Brew Vino at the time of the incident. (*Id*. ¶¶ 7-12.)

The complaint alleges that on April 21, 2018, Plaintiffs used their membership at Brew Vino's golf course for the first time together with three other African American females. (*Id*. ¶¶ 14-16.) As the group approached the second hole, one of the Individual Defendants approached them and said they were playing too slow and that they needed to keep pace. (*Id.* ¶ 22) In response, one person in Plaintiffs' group told the Individual Defendant that the group was not playing too slow and not causing a delay, and that the Individual Defendant was treating them differently than Caucasian male golfers. (*Id.* ¶ 25.)

Sometime thereafter, the Individual Defendant called the police and an officer responded to the golf course. (*Id.*) The Individual Defendant advised the officer that the group was not following the course's required pace and that one of the females accused him of being racist when he tried confronting the group. (*Id.*) At some point, the Individual Defendant told the officer that the group had caught up to the proper hole and that he no longer needed to speak with them. (*Id.*) The group eventually completed the first nine holes, at which time Ms. Crosby and two others from the group left the course, while Ms. Ojo and another remained in order to complete the last nine holes. (*Id.* ¶¶ 26-27.)

As Ms. Ojo and the other individual approached the tenth hole, another group at the hole told the two females to go ahead of them because they were taking a break. (*Id.* ¶ 30.) After they did so, one of the Individual Defendants approached the

females and told them not to cut others off. (*Id.* 31.) Despite explaining to the Individual Defendant that they were told to go ahead, a verbal altercation ensued with several of the Individual Defendants. One of the Individual Defendants told the two females to leave the course. (*Id.* ¶¶ 32-35.) Another Individual Defendant went inside the clubhouse and returned with checks to reimburse Ms. Ojo and the other female for their membership fees, which they refused. (*Id.* ¶¶ 36-37.) A third Individual Defendant called the police for a second time. (*Id.* ¶ 37.)

Plaintiffs subsequently filed complaints about the incident with the Pennsylvania Human Relations Commission ("PHRC"), which issued both Plaintiffs a right to sue letter and made findings of fact that probable cause existed to support their allegations that they were profiled and harassed based on race and sex in violation of the Pennsylvania Human Relations Act. (*Id.* ¶ 4.)

On April 20, 2020, Plaintiffs initiated this action by filing a complaint. The complaint asserts claims against Defendants for Violation of 42 U.S.C. Section 1981 (Count I), Conspiracy to violate Constitutional Rights under 42 U.S.C. Section 1985 (Count II), Conspiracy to violate Constitutional Rights under 42 U.S.C. Section 1986 (Count III), Respondeat Superior (Count IV), Violation of the Pennsylvania Human Relations Act (Count V), Breach of Contract (Count VI), Constructive Fraud in Contract (Count VII), Tortious Interference with Contract (Count VIII), Defamation (Count IX), and Infliction of Emotional Distress (Count X).

On August 21, 2020, after Defendants failed to timely respond to the complaint, Plaintiffs filed a motion for default. (Docs. 7-11.) On August 24, 2020, the Clerk of Court entered default against Defendants. (Docs. 12-16.) On August 29, 2020, Defendants filed a motion for default judgment. (Doc. 17.) On August 31, 2020, Plaintiffs filed a "Motion for Relief from Default Judgment" pursuant to Rule 60 of the Federal Rules of Civil Procedure. (Doc. 18.)

On February 4, 2021, the court conditionally denied the motion. (Doc. 22.) The court found that Defendants' motion erroneously requested relief from default judgment, which had not been entered in the case. (Doc. 21.) It also found that the motion failed to demonstrate that relief from default was appropriate because it did not assert a meritorious defense and did not provide the court with sufficient information to make an informed assessment on whether Defendants were culpable for their default. (*Id.*) Nonetheless, mindful of the Third Circuit's policy disfavoring default judgments and finding that Defendants' delay did not and would not hinder Plaintiffs from prosecuting their case on the merits, the court denied the motion conditionally and granted Defendants' leave to file a proper brief in support of relief from default and in opposition to Plaintiffs' motion for default judgment. (*Id.*; Doc. 22.) Defendants timely filed their renewed brief on March 6, 2021, and Plaintiffs filed a response on April 5, 2021. (Docs. 23-24.) The matter is thus ripe for disposition.

## II. DISCUSSION

"A court may set aside entry of default for good cause," *World Entm't Inc. v. Brown*, 487 Fed.Appx. 758, 761 (3d Cir. 2012) (citing Fed. R. Civ. P. 55(c)), and such a determination is "within the sound discretion of the district court." *Johnson v. Roskosci*, Civ. No. 15-CV-1232, 2016 WL 127843, *1 (M.D. Pa. Jan. 12, 2016) (citing F.C. Intrieri Const. Co. v. Patel, Civ. No. 12-cv-0361, 2012 WL 2052682, *1 (M.D. Pa. June 7, 2012)) (then citing *Dambach v. United States*, 211 Fed.Appx. 105, 109 (3d Cir. 2006)). In determining whether to set aside an entry of default, the court must consider: "(1) whether plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense, that is, whether the defendant's allegations, if established at trial, would constitute a complete defense to the action; and (3) whether the default was the result of defendant's culpable conduct." *Dambach*, 211 Fed.Appx. at 109 (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Although motions to vacate entry of default are held to a more lenient standard, the factors to consider are the same as with motions to vacate entry of default judgment. *See Nat'l Specialty Ins. Co. v. Papa*, Civ. No. 11-CV-2798, 2012 WL 868944, *2 (D.N.J. Mar. 14, 2012) (citing *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982)). Courts do "not favor entry of defaults or default judgments," *Hill v. Williamsport Police Dept.*, 69 Fed.Appx. 49, 51 (3d Cir. 2003),

5

and "[a]ny doubt should be resolved in favor of setting aside the default and reaching a decision on the merits." *PTD Enters., LLC v. Hosp. Trade Program, LLC*, 2015 WL 1893152, *2 (M.D. Pa. Apr. 24, 2015) (citing *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983)).

Here, the factor concerned with whether the default was the result of the defendant's culpable conduct favors granting relief from default. Defendants submit an affidavit from one of the Individual Defendants swearing that after the complaint was filed, he and the other Individual Defendants spoke with an attorney about the need to respond to the complaint. (Doc. 23, p. 25.) According to the affidavit, the Individual Defendant understood from the discussion that the attorney would negotiate an extension of Defendants' time to respond to the complaint, and the Individual Defendant later believed that the attorney had in fact negotiated such an extension. (*Id.*) Plaintiffs' brief denies that such an extension was ever negotiated, but there is at least minimal corroboration in the record to support Defendants' belief. Specifically, Defendants submit an email from their counsel to Plaintiffs' counsel, dated the same day that default was entered, in which defense counsel stated, "It was my understanding from Mr. Chronister that you had graciously offered to extend the deadline to respond to the Complaint." (Doc. 23, p. 27.) Though Defendants' affidavit and counsel's email hardly prove that an extension was actually agreed upon, this record provides a sufficient basis for concluding that

6

Defendants' default was not the result of their own culpable conduct. As such, this factor supports granting Defendants relief from default.

In addition, Defendants have sufficiently demonstrated that meritorious defenses exist to each of Plaintiffs' claims. With respect to Plaintiffs' core allegations of sex and race discrimination, Defendants submit that the complaint wrongly characterizes their actions as motivated by race and discrimination when in fact they were acting with the legitimate purpose of enforcing the rules of the course. Defendants support their defense by attaching the course's "Local Rules," with the first rule stating that "[p]ace of play is monitored" and that "[c]ontact will be made with your group if you fall behind." (Doc. 23, p. 29.) The rules go on to urge members to call a specific number "[i]f you see any violations or slow play," and they also set forth the time in which 18-holes must be completed. (*Id*.) By setting forth evidence of a legitimate, non-discriminatory purpose for their actions, and by arguing that Plaintiffs cannot show evidence of pretext, Defendants have sufficiently showed that they have a meritorious defense to the bulk of Plaintiffs' claims.

Defendants further raise several additional specific defenses to each of Plaintiffs' claims, including that Plaintiffs' tort claims are preempted by statute, that Plaintiffs cannot make out the substantive elements of some claims as a matter of law, and that other claims are subject to dismissal based on lack of jurisdiction. While Plaintiffs respond by raising several substantive and reasonable

7

counterarguments to these defenses, they do not show that the defenses conclusively lack merit and cannot succeed.[1]

Defendants' failure to demonstrate the existence of meritorious defenses by way of an answer or proposed answer is not fatal to their motion. It is true that meritorious defenses should typically be asserted in an answer, *see $55,518.05 in U.S. Currency*, 728 F.2d at 195, but doing so through other means may be acceptable in some circumstances. *See e.g., J Supor & Son Trucking & Riggins Co., Inc. v. Kenworth Truck Co.*, 791 F. App'x 308, 315 (3d Cir. 2019). The court's prior memorandum and order conditionally denying Defendants' motion ordered them to strictly comply with the court's instructions in the filing of any new brief and included a directive that the brief must be supported by specific facts and law showing the existence of meritorious defenses. Defendants' renewed brief substantially complied with the court's instructions and included colorable and relatively extensive arguments with respect to each claim asserted in the complaint, and it would be unduly harsh to now punish them for not asserting their specific defenses via answer. Defendants have therefore shown the existence of meritorious

---

[1] Though Plaintiffs do correctly argue that Defendants' proffered defense to their breach of contract claim lacks merit because it relies on the false premise that a contract claim is a tort claim, Defendants' arguments in support of their other defenses that they acted for the purpose of enforcing the course's rules regarding pace-of-play raises at least a colorable defense to Plaintiffs' contract claim.

defenses to Plaintiffs' claims, and this factor thus supports granting relief from default.

Finally, for the same reasons set forth in the court's prior memorandum on Defendants' motion, the court finds that Plaintiffs have not been and will not be prejudiced by having to defend this case on the merits. Plaintiffs' latest opposition brief presents no substantive reason for having suffered prejudice from the default, and the court finds that an alternative sanction in the form of attorney's fees will be sufficient to deter Defendants' conduct and compensate Plaintiffs for the expenses incurred in connection with the default. As such, each of the relevant factors support granting Defendants' relief from default.

### III.  CONCLUSION

For the reasons outlined above, Defendants' motion for relief from default will be granted. An appropriate order shall follow.

Dated: May 5, 2021

>*/s/ Sylvia H. Rambo*
>SYLVIA H. RAMBO
>United States District Judge