IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MYNECA OJO, et al.,** | : | Civil No. 20-CV-00661 |
| **Plaintiffs,** | : | |
| v. | : | |
| **BREW VINO, LCC, et al.,** | : | |
| **Defendants.** | : | Judge Sylvia H. Rambo |

### **M E M O R A N D U M**

Before the court is Defendants' civil contempt motion against non-party Sandra Thompson, Esquire, who has been subpoenaed as a deposition witness in this case to produce certain records. (Doc. 79.) For the following reasons, the court will grant the motion.

I. **BACKGROUND**

The dispute underlying this matter stems from a five-person golf outing on April 21, 2018, at Grandview Golf Course in York County, Pennsylvania, during which the golfers—four of whom are plaintiffs to this action—and management became embroiled in a series of heated exchanges, which the golfers attribute to race and gender-based discrimination. Thompson was the fifth golfer in the group, and though she elected not to be a party to this ongoing federal suit, she considers herself to be a "separately aggrieved person." (Doc. 76 ¶ 1.)

Due to her involvement in the events of April 21st, Defendants subpoenaed Thompson to testify at a deposition on July 20, 2022, and to produce certain records. (Doc. 100 p. 2.) Though erroneously unsigned and undated, the subpoena provided defense counsel Kathryn Nonas-Hunter, Esquire's name and contact information. (*Id.*) In the subpoena, Nonas-Hunter directed Thompson as follows:

> You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: any and all material pertaining and relevant to the Plaintiffs' and/or Deponents experience at Grandview Golf Course on April 18 2021[1], as well as subsequent investigations, interactions and references thereto, including administrative procedures and litigation, of which Deponent has personal knowledge. To wit, text messages, app messages betwixt deponent and Plaintiffs, etc.

(*Id.*)

Defendants simultaneously furnished to Thompson a document titled, "Notice of Deposition/Request for Production of Documents" (Doc. 79-3 pp. 5-7.) In pertinent part, the document directed Thompson to:

> produce any and all physical, electronic or otherwise intangible evidence, which is discoverable pursuant to the Rules of Civil Procedure, and to include any materials relevant not only to the above captioned matters, but also relevant or relating to associated administrative procedures or investigations. Such material and evidence shall include, but is not limited to any written communication including but not limited to text messages, communication application messages and emails from and/or to any and all of the Plaintiffs in the

---

[1] The subpoena contains a typographical error referring to "April 18, 2021" as the date of the underlying conduct at Grandview Golf Course. Thompson and all parties understand the relevant events occurred on April 21, 2018.

2

> above captioned matter; mobile or cellular telephone records of the Month of April, 2018; any and all social media postings regarding, referencing, related to or about the events involving Plaintiffs and/or deponent that transpired at or around Grandview Golf Course on or around April 21, 2018; copies of all video and/or audio recordings regarding, referencing, related to or about the events involving Plaintiffs and/or deponent that transpired at or around Grandview Golf Course on or around April 21, 2018.

(Doc. 79-3 p. 6.)

Thompson appeared as summoned for her July 20, 2022, deposition but failed to produce the documents outlined in the subpoena and notice of deposition. Instead, when asked if she brought the requested documents, she responded: "I brought some that were handy. If you want documents, I would need a disk or flash drive, or something like that, or, you know, there would be fees for copying all of that." (*See* Doc. 79-2 p. 6.) To accommodate this demand, at the conclusion of the deposition, defense counsel provided a blank flash drive to Thompson.

After more than two weeks without any production, Nonas-Hunter sent Thompson a letter on August 4, 2022, noting that the excuse she provided at her deposition for failing to comply was not a valid objection to the subpoena and again demanding production of the requested documents no later than August 18, 2022.[2]

---

[2] Under Fed. R. Civ. P. 45, an objection may be made as follows:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or . . . to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.

3

(Doc. 79-3.) The letter also reminded Thompson of her obligations under Federal Rule of Civil Procedure 45, and included a copy of the rule for her reference. (*See id.*) Again, Thompson did not respond or comply.

Six months later—after receiving no production or any valid objection to the subpoena—Defendants filed a motion to compel and a supporting brief.[3] (Docs. 67, 73.) Yet again, Thompson failed to timely respond. Thus, on March 10, 2023, Magistrate Judge Martin Carlson issued an order stating, in pertinent part:

> Th[e] motion [to compel] was filed on February 7, 2023, and a brief in support of the motion was submitted on February 21, 2023. The pleadings all bear certificates of service indicating the subpoenaed attorney-deponent was served with a copy of the motion and brief. The attorney-deponent has not responded to the motion and the time for response set by the rules of this court has now lapsed. Accordingly . . . On or before March 30, 2023, the attorney-deponent will comply with all aspects of the subpoena or show cause why she should not be required to do so.

(Doc. 75.)

On March 14, 2023, Thompson filed a response with the court wherein she attempted to excuse her lack of compliance by stating, *inter alia*: that she was busy traveling before her deposition; Defendants had failed to properly serve her with the subpoena prior to the July deposition; Defendants had failed to properly serve her

---

45(d)(2)(B).

[3] The motion to compel fully details the language of both the Notice of Deposition and Subpoena to Testify at a Deposition. (*See* Doc. 67 ¶¶ 4-5.)

with the motion to compel; and Defendants did not communicate with her between August and February. (Doc. 76 ¶¶ 2-9.) She further stated that had Defendants "properly conferred" with her before filing their motion to compel, she would have provided the requested information. (*Id.*) She also indicated, however, that while she was providing the requested documents to Defendants via Google Drive together with her response, she was not providing "any document or communication between Respondent and the Plaintiffs, or of Respondent's, that: are irrelevant to the April 21, 2018 discriminatory treatment, are privileged, are work product, and/or that are equally available to Defendants; to these Respondent objects." (*Id.* ¶ 11.)

Several days later, Nonas-Hunter notified the court by letter that, while Thompson had produced forty-nine screenshots and one video, the production was "severely deficient." (Doc. 77 p. 1.) She explained that "[t]he screenshots are not comprehensive and appear to end in June 2018. The screenshots further do not appear to contain complete messages. There are no mobile or cellular telephone records of the month of April 2018 [and] Ms. Thompson also failed to include any social media postings whatsoever." (*Id.* pp. 1-2.).

Thereafter, on April 18, 2023, Defendants filed a motion for contempt. (Doc. 79.) In the motion, Defendants advised the court that on March 30, 2023, Thompson sent an email to counsel for both Plaintiffs and Defendants stating: "Good evening Counsel, Attached are other items found in addition to the about 170 items sent on

5

March 14, 2023 by Google Link. Thank you." (Doc. 79-4 p. 2.) The email attachment contained a redacted voicemail log; three voicemails; a letter from "We Are Golf" to Thompson; and a letter from Thompson to an unknown recipient on an unknown date. (Doc. 79.) Defendants once again argued that notwithstanding these additional disclosures, Thompson still had failed to provide mobile or cellular records for the month of April 2018, social media postings about the events, and video and/or audio recordings related to the events. (*Id.* ¶¶ 26-28.) Defendants noted that, rather than provide these records, Thompson raised improper objections and "ma[de] the blanket statement that the documents are 'privileged' and/or 'are work product.'" (*Id.* ¶ 29.) Defendants were unable to challenge these classifications because the basis of Thompson's claims of privilege were unknown. (*Id.* ¶ 31.) As such, Defendants asked the court to issue a ruling to show cause as to why Thompson should not be held in contempt for failure to comply with the court's March 10, 2023, order.

Due to the jurisdictional bar existing in 28 U.S.C. § 636 (e)(6)(B)(iii), Judge Carlson certified the contempt issue to this court, and a hearing was held on the motion on January 11, 2024. (*See* Docs. 82, 87, 88.) Nonas-Hunter was present serving as counsel for Defendants, and Thompson was present with her attorney, Leticia Chavez-Freed, Esquire. The hearing lasted approximately ninety minutes and both sides were given the opportunity to present arguments, introduce evidence, and

6

call witnesses. Thompson was the only witness called and was questioned by Nonas-Hunter and Chavez-Freed. At the conclusion of the hearing, the court took the issue under advisement.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45(g) provides that the "court for the district where compliance [of a subpoena] is required . . . may hold in contempt a person who, having been served, fails without adequate notice to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Before a court can make a finding of contempt, "due process . . . require[s] notice and a hearing . . . so that the parties have an opportunity to explain the conduct deemed deficient . . . and that a record will be available to facilitate appellate review." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1322 (3d Cir. 1995) (internal quotation marks and citation omitted). "To prove civil contempt the court must find by clear and convincing evidence that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Id.* at 1326 (citing *Roe v. Operation Rescue,* 919 F.2d 857, 871 (3d Cir.1990)); *see also High Tech Nat'l, LLC v. Stead*, No. 19-191, 2020 WL 3605286, at *3 (E.D. Pa. July 2, 2020) (applying the three-part *Harris* test in the context of a 45(g) motion). Moreover, the court must determine "whether those who have failed to comply with a subpoena or related Court Order have done so

'without adequate excuse.'" *High Tech*, 2020 WL 3605286, at *3 (quoting Fed R. Civ. P. 45(g)).

### III. DISCUSSION

A. Thompson has not provided an adequate excuse for her failure to comply with the court's order.

It is undisputed that (1) Judge Carlson's March 10, 2023, order was a valid court order, (2) Thompson had knowledge of the order, and (3) she disobeyed the order by withholding relevant documents. Thus, the only issue presented at the contempt hearing was whether Thompson had an adequate excuse for her behavior as contemplated by Rule 45(g). Clearly, she did not.

Indeed, Thompson's excuses for her lack of compliance have been myriad and evolving. At the time of her deposition, she blamed her failure to bring the items on her travel schedule as well as on defense counsel for not providing her with a flash drive, yet when she was provided a flash drive, she still did not comply. Though she did not provide any justification for her failure to respond to Defendant's third request in August, when ordered to show cause in March for her failure to provide the documents at any point in the interim 8-month period, she blamed defense counsel's lack of communication since August. At every stage, she has pointed to allegedly improper service of the subpoena or subsequent motions and order, and then for the first time after she was ordered to show cause why she should not be held in contempt, she claimed privilege, work product, or equal availability. Finally,

8

at the contempt hearing, Thompson rehashed the above excuses and added that Magistrate Judge Carlson's use of the word "subpoena" in his order excused her obligation to comply with both the subpoena and notice of deposition, and further, that she was unaware of her obligations under Rule 45.

Thompson's litany of excuses, not one of which this court finds compelling or credible, does not warrant an in-depth discussion, let alone the ink necessary for such a discussion. However, the court will briefly address Magistrate Judge Carlson's order and Thompson's belated invocation of privilege.

At the hearing, Thompson argued that the March 10th order only referred to the subpoena and, therefore, her production-related obligations were confined only to the text of the subpoena and not to the notice of deposition that was served contemporaneously with the subpoena. Although Thompson often quibbles with technicalities to excuse her production obligations, the order—much like this opinion—plainly used "subpoena" to refer to the subpoena and its accompanying documents. But, to the extent a technicality could prevail here (which it cannot), the requested documents described within the notice of deposition fit squarely within the scope of discovery highlighted in the subpoena itself, which asked for "any and all material" pertaining to the events at the golf course. Thompson's argument that the March 10th order foreclosed the production of the more refined list of documents is uncompelling, and the fact that she failed to seek clarification with Nonas-Hunter

9

or the court does not counsel the court to adopt her objectively unreasonable reading of the order. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1797, 204 L. Ed. 2d 129 (2019) ("A party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable.").

Furthermore, while Thompson now claims both attorney-client and work-product privileges as reasons for not turning over specific records, she not once sought out the rule-provided remedies for a non-party claiming privilege. The relevant rule states:

> A person withholding subpoenaed information under a claim that it is privilege or subject to protection as trial-preparation material must: (1) expressly make the claim; and (ii) describe the nature of the withheld documents, communications or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(e)(2)(A)(i-ii).

Rather than expressly objecting to the information and describing the nature of the privilege in a way that would enable the parties or the court to assess its relevance, Thompson merely boldly asserted its existence long after the deadline for any objections. Further, by failing to comply with Rule 45, Thompson did not provide the defendants with the opportunity to challenge the invocation of privilege.[4]

---

[4] The court will also note that Thompson's apparent ignorance of the Federal Rules of Civil Procedure is not adequate to excuse her non-compliance, especially considering that she is a practicing attorney, albeit in state court. Both the July 6, 2022, notice of deposition and Nonas-

Accordingly, Defendants have demonstrated by clear and convincing evidence that Thompson has committed civil contempt by not complying with her discovery obligations, and Thompson has not provided an adequate excuse to consider her noncompliance anything other than willful.

B. <u>The court will sanction Thompson for her failure to comply with the court's order</u>.

Having found that Thompson has committed civil contempt, the next issue to assess is the appropriate remedy to compensate Defendants and ensure Thompson complies with the March 10, 2023, order moving forward.

"The Third Circuit has made clear that a district court has wide discretion in fashioning a civil contempt remedy." *See Paddick v. Butt*, No. 09-cv-4285, 2018 WL 6830476, at *6 (E.D. Pa. Dec. 27, 2018) (citing *Delaware Valley Citizens' Council for Clean Air v. Com. of Pa.*, 678 F.2d 470, 478 (3d Cir. 1982)). "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" *Robin*

---

Hunter's August 18, 2022, letter provided her with Rule 45. Thompson herself testified that she did not comply with the subpoena, at least in part, because it was unsigned and undated. Thompson's simultaneous effort to assert ignorance of the federal rules as a shield to her non-compliance while also relying on certain rules as a sword to invalidate the subpoena altogether is disingenuous at best. Moreover, a subpoena lacking in some technical regards is not rendered ineffective. *See e.g.*, *Simon* v. *FIA Card Servs. NA*, 639 F. App'x 885, 889-90 (3d Cir. 2016) (finding that subpoena deficient in some limited respects rendering them "technically incomplete" did not render it unlawful because the recipient "would not have been led astray by them.")

*Woods Inc. v. Woods,* 28 F.3d 396, 400 (3d Cir. 1994) (quoting *McDonald's Corp. v. Victory Invs.,* 727 F.2d 82, 87 (3d Cir.1984)). Civil contempt sanctions "may include fines, incarceration, or a reimbursement of costs incurred while seeking to obtain compliance." *High Tech* 2020 WL 3605286, at *3 (citing *Int'l Plastics & Equip. Corp. v. Taylor's Indus. Servs.*, No. 07-1053, 2011 WL 1399081, at * 4–6 (W.D. Pa. Apr. 12, 2011)); *see also Paddick*, 2018 WL 6830476, at *1 ("If successful in a civil contempt proceeding, the complainant is entitled to costs of investigating violation of the court order [and] preparing for and conducting the contempt proceeding, and attorneys' fees." (citation omitted)).

When providing attorneys' fees as a sanction, the court must first determine a reasonable billing rate. "The petitioning attorney's usual billing rate is typically a starting point in this calculation, but it is not dispositive." *Andresen v. Pennsylvania*, No. 1:20-CV-989, 2021 WL 5847058, at *2 (M.D. Pa. Dec. 9, 2021) (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)). The court must also determine whether the billing rate is properly "calculated according to the prevailing market rates in the relevant community." *Id.* Once a proper billing rate is assessed, the court must determine whether the claimed number of hours were "reasonably expended for each of the purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Public Int. Research Group of*

*N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal quotations and citations omitted).

At the outset, the court will sanction Thompson to pay the attorney's fees associated with her repeated failures to comply with her production obligations. At the contempt hearing, Nonas-Hunter proffered an invoice for $6,424.70 total in fees and costs associated with prosecuting the motions to compel and to hold Thompson in contempt, which includes 12.1 hours at a rate of $500 per hour and administrative expenses in the amount of $374.70.  The court finds Nonas-Hunter's hourly rate reasonable. She has practiced law for nearly fifteen years and is a partner in her law firm.  Her requested rate of $500 per hour is within the range set by the Community Legal Services of Philadelphia's ("CLS") fee schedule, which provides an hourly rate of $420-$525 for attorneys with such experience. This court has previously used the CLS rates as a guide to reasonableness in this case, and the court will do so again here. *See Ojo v. Brew Vino, LLC*, No. 1:20-CV-00661, 2021 WL 4149187, at *2 (M.D. Pa. Sept. 13, 2021); *see also Lightstyles, Ltd. v. Marvin Lumber & Cedar Co.*, No. 13-CV-1510, 2015 WL 4078826, at *4 (M.D. Pa. July 6, 2015) (applying the CLS fee schedule).

Overall, the court finds Nonas-Hunter's hours and associated expenses reasonable. Nonetheless, the court will not include the $1,874.70 in fees and costs associated with Thompson's deposition, as it is undisputed that Thompson appeared

for the deposition as summoned and was deposed. The court will, however, assess an additional 2.5 hours in attorneys' fees for time spent preparing for (1 hour) and attending (1.5 hours) the contempt hearing. In total, Thompson will be ordered to pay 11.6 hours of Defendants' attorney's fees and costs in the amount of $5,800.

The court next turns to other coercive sanctions appropriate to ensure Thompson's future compliance with the March 10, 2023, order. "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." *Harris*, 582 F.3d at 517 (internal quotations and citations omitted). Optimistic that confinement is unnecessary to ensure compliance with a court order, many courts have imposed daily fines for each day after the individual in contempt failed to respond to a subpoena. *See Stead*, 2020 WL 3605286, at *4 (collecting cases); *Shulman v. Chromatex, Inc.*, No. 3:08-CV-0229, 2012 WL 3289006, at *3 (M.D. Pa. Aug. 10, 2012) (imposing daily $500 indefinite fine on defendants until plaintiffs certify compliance with discovery obligations); *Tracfone Wireless, Inc. v. LaMarsh*, 307 F.R.D. 173, 176 (W.D. Pa. 2015) (imposing daily $200 indefinite fine as part of civil contempt sanctions until respondents schedule a time and place for deposition).

Given the nature of Thompson's shortfalls in producing discovery to this point—roughly a year and a half after such production was originally requested in July of 2022—the court will order Thompson to pay $300.00 per day to the Clerk of Court for the United States District Court for the Middle District of Pennsylvania for each additional day of noncompliance.

This fine will commence twenty-one days after Thompson receives service of this opinion and accompanying order and will last indefinitely until Thompson fully complies with her discovery obligations as outlined in the subpoena and including the production of documents specified in the notice of deposition. If Thompson makes any claims of privilege, Thompson must submit to the court for *in camera* review any piece of discovery she withholds from Defendants based on a claim of privilege together with a detailed privilege log. If Thompson fails to provide the requested documents to Defendants and/or the court within twenty-one days of receipt of this opinion and the accompanying order, the court will issue an order commencing the start of the fine. Defendants shall immediately inform the court if Thompson fully complies with her discovery obligations.

An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
Sylvia H. Rambo
United States District Judge

Dated: February 6th 2024