IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MYNECA Y. OJO; KAREN ANN      :     No. 1:20cv661
CROSBY;  SANDRA HARRISON;    :
and CAROLYN DOW,             :     (Judge Munley)
             Plaintiffs   :
                       :     (Magistrate Judge Caraballo)
     v.                    :
                       :
BREW VINO LLC; STEVE        :
CHRONISTER; MARC BOWER;    :
JORDAN LYLE CHRONISTER;    :
BRIAN POLACHEK; and JOHN DOE, :
            Defendants  :
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Under federal law, access to places of public accommodation must be afforded on equal terms because discrimination in such settings deprives persons of their individual dignity. Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 250 (1964).  On a golf course, there are rules requiring players to keep pace and avoid unreasonable delay.  In this case, a jury will decide whether what occurred was a violation of the rules of golf—or a violation of civil rights law.

Plaintiffs Myneca Ojo, Karen Crosby, Sandra Harrison, and Carolyn Dow initiated the instant civil rights action against Defendants Brew Vino LLC ("Brew Vino"), Steven Chronister and his son, Jordan Chronister, Marc Bower, and Brian Polachek.  Plaintiffs allege that they were subjected to racial and gender

discrimination at the Grandview Golf Course, a facility owned and operated by Brew Vino in York County, Pennsylvania. (Docs. 1, 44).[1]

In May 2023, defendants moved for summary judgment. (Doc. 81). In a report and recommendation ("R&R"), United States Magistrate Judge Martin C. Carlson recommended that the motion be granted in part and denied in part. (Doc. 87). The R&R further observed that supplemental briefing on the issue of individual liability under 42 U.S.C. 1981 ("Section 1981") and 2000a ("Section 2000a") may be appropriate. (Id. at 19 n.4). The Honorable Sylvia H. Rambo adopted Magistrate Judge Carlson's R&R and directed the parties to submit supplemental briefing on the issue of individual liability. (Doc. 89).

Upon completion of supplemental briefing, defendants' motion for summary judgment was referred to Magistrate Judge Phillip J. Caraballo for the issuance of a second R&R related to summary judgment.[2]

The R&R before the court recommends that the court deny the motion for summary judgment as to plaintiffs' claims under Sections 1981 and 2000a. (Doc.

---

[1] Initially, Plaintiffs Myneca Ojo and Karen Crosby initiated the instant civil rights action against the defendants. (Doc. 1). The following day, Plaintiffs Sandra Harrison and Carolyn Dow instituted a separate action asserting substantially similar claims. Harrison v. Brew Vino, LLC, No. 1:20-CV-666 (M.D. Pa. 2020). By order dated January 28, 2022, the court consolidated the two matters. (Doc. 44).

[2] Defendants' supplemental brief is not filed on behalf of Defendant Jordan Chronister, but only on behalf of Defendants Bower, Brian Polachek, and Steven Chronister. (Id.)

2

81; Doc. 133 at 27).  Defendants have filed objections to which plaintiffs have responded. (See Docs. 134,135).  Accordingly, the R&R is ripe for disposition.

**Background**

On April 21, 2018, the four plaintiffs and Sandra Thompson were playing golf at the Grandview Golf Course.[3] (Doc. 133 at 4).  All were African-American women with three-year memberships at the golf course. (Id.)  During the outing, plaintiffs experienced a series of unpleasant interactions with Steven Chronister and other Brew Vino personnel. (Id.)  As a general matter, the plaintiffs aver that the defendants were motivated by discriminatory biases; the defendants contend that they sought to speed up the plaintiffs' pace of play. (Id.)

The initial encounter occurred shortly after the plaintiffs finished the first hole. (Id. at 5).  Steven Chronister approached plaintiffs twice and instructed them to increase their pace. (Id.)  According to plaintiffs, Steven identified himself as the owner of the golf course and ultimately directed them to leave, offering to refund their cart fees and memberships. (Id.)

The precise details of these early exchanges remain in dispute.  Following these interactions, Steven Chronister called 911 and requested police

---

[3] Unless noted otherwise, the court adopts the factual background set forth in the R&R as the parties do not dispute those facts.  When necessary, the court also cites to the record for additional facts.  All facts from the record are construed in a light most favorable to plaintiffs as the nonmoving parties. See Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 187 (3d Cir. 2015) (citation omitted).

assistance. (Id.) During that call, Steven identified himself as the golf course manager. (Doc. 84-11). When asked whether any of the women had weapons, Chronister responded that there were no weapons present other than "her mouth." (Id.) Subsequently, Officer Erika Eiker was dispatched to the golf course and rode on a golf cart with Defendant Polachek, the general manager, to speak with the plaintiffs. (Doc. 133 at 5). Nonetheless, Officer Eiker departed before interacting with plaintiffs after being advised by Steven that police intervention was no longer necessary. (Id.)

After completing the first nine holes, Plaintiffs Crosby, Harrison, and Dow left the course. (Id.) Plaintiff Ojo opted to continue golfing with the non-party here, Sandra Thompson; however, the two first took a break. (Id.) Before they could begin the tenth hole, a second confrontation occurred involving Steven Chronister, his son Jordan Chronister, Polachek, and Bower. (Doc. 84- 7 at 49- 50). Portions of this incident were captured on video. (See Doc. 84-16).

The video shows Jordan Chronister and Bower instructing Ojo and Thompson to leave the premises, with Steven and Polachek nearby. (Id.) During the exchange, Steven Chronister and Bower referenced contacting law enforcement a second time. (Id.) Jordan Chronister also stated: "we asked you three times now to remove yourself from the premises, you have yet to remove yourself." (Id.) Consistent with those statements, Steven Chronister placed a

4

second 911 call and informed the dispatcher that he wanted Ojo and Thompson

"off the golf course" and stated that police "need to get out here quickly." (Doc.

84-13).  When asked whether any of the women possessed weapons, Chronister

again responded that the only weapon brandished by any of the women golfers

was "her mouth." (Id.)

Jerry Higgins, a witness who was playing behind plaintiffs' group testified

that one of the defendants prevented Ojo and Thompson from using their golf

cart. (Doc. 84-6 at 22).  As is relevant here, Jerry testified as follows:

> I saw the guys from the golf course came out and told them
> that they were not going to play anymore golf. Somebody
> took the key out of the cart. I'm not sure which of the other
> three guys that I don't know that was, took the key out of
> the cart so they couldn't go anywhere.

(Doc. 84-6 at 22:13-18).

Ojo testified that Steven Chronister again offered to "refund all the ladies'

memberships," and that Bower produced a prewritten check. (Doc. 84-15 at

215:2-11).  Steven Chronister's testimony confirmed that Polachek had

possession of the checks. (Doc. 84-7 at 120-23).  Ojo declined the refund as she

was "trying to preserve [her] membership." (Doc. 84-15 at 217:10-12).

Thereafter, upon the arrival of two police officers, Ojo and Thompson departed

the golf course. (Doc. 133 at 7).

**Jurisdiction**

As plaintiffs bring suit pursuant to Sections 1981 and 2000a, federal statutory provisions, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

### 1. Objections to R&Rs

In disposing of objections to a magistrate judge's R&R, the district court must make a de novo determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

### 2. Motion for Summary Judgment

The R&R addressed defendants' motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact in the case

6

and the moving party is entitled to judgment as a matter of law.  Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation omitted); see also FED. R. CIV. P. 56(a).  "A fact is material if its resolution 'might affect the outcome of the suit under the governing law,'…[a]nd a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

At this stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  All "facts in dispute," Daniels, 776 F.3d at 187, and all "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the [opposing] party[,]" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 84 (3d Cir. 1982).  Furthermore, "a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted).  "[W]here the non-moving

7

party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citations omitted).

A motion for summary judgment may also be granted where a moving party demonstrates that the nonmoving party "has not made 'a showing sufficient to establish the existence of an element essential to that party's case ... on which that party will bear the burden of proof at trial.' " Mall Chevrolet, Inc., 99 F.4th at 630 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986) (emphasis removed)).  After a moving party carries their burden to show the absence of a genuine, material factual dispute, Rule 56 flips the burden onto "the nonmovant to 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.' " Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 324).  The non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts." Id. (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587).

If a party fails to properly address another party's assertion of fact as required by Rule 56, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).  Summary judgment is

8

appropriate where the moving party is entitled to judgment as a matter of law. Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).

**Analysis**

Defendants advance objections to the R&R, focusing on two main issues: 1) whether Section 1981 provides a statutory basis for imposing liability on an entity's individual employees; and 2) whether Section 2000a permits the same. (Doc. 134 at ECF pp. 4, 6).  Defendants' objections simply recycle arguments already presented to and rejected by Magistrate Judge Caraballo.  The R&R addressed these arguments in depth and defendants' objections offer no new authority, facts, or persuasive reasons to disturb the magistrate judge's well-reasoned analysis.  Accordingly, following a *de novo* review, the court will adopt the R&R and deny defendants' motion for summary judgment.

### 1. Individual Liability under Section 1981

First, defendants object to the R&R's conclusion that the individual defendants could be subject to liability under Section 1981.  Notably, defendants concede that Brew Vino and Jordan Chronister could be held liable for the actions of their employees—namely Bower, Polachek, and Steven Chronister. (Doc. 134 at ECF p. 4).  However, defendants argue that holding the employees liable under Section 1981 would improperly reverse the law of agency by making

"the servant[s] responsible for the master[.]" (Id. at ECF p. 5). This argument was rejected by Magistrate Judge Caraballo. It fares no better the second time around.

Section 1981 "prohibits racial discrimination in the making and enforcement of contracts." Brown v. Philip Morris Inc., 250 F.3d 789, 796 (3d Cir. 2001). Specifically, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.] 42 U.S.C. § 1981(a). Making and enforcing contracts "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b).

To sustain a Section 1981 discrimination claim, "a plaintiff must allege facts in support of the following elements: (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning . . . the right to make and enforce contracts[.]"[4] Brown, 250 F.3d at 797 (cleaned up).

---

[4] It does not appear that the particular challenges raised here were expressly addressed in other cases. Nonetheless, several cases illustrate the application of Section 1981 across a range of contractual contexts, including claims against individual employees. See, e.g., Burns v. SeaWorld Parks & Ent., Inc., No. CV 22-2941, 2024 WL 1660514, at *8–14 (E.D. Pa. Apr. 17, 2024) (addressing claims against individual employees accused of depriving plaintiffs of the contractual right to be free from racial discrimination at Sesame Place); Shumate v. Twin Tier Hosp., LLC, 655 F. Supp. 2d 521, 528, 532 (M.D. Pa. 2009) (Munley, James, J.) (denying an individual employee's motion to dismiss plaintiffs' allegations of racial discrimination in the

Section 1981 traces its origins to the Civil Rights Act of 1866 and the subsequent reenactment of Section 1 of that Act in 1870. Mahone v. Waddle, 564 F.2d 1018, 1030 (3d Cir. 1977) (citing Runyon v. McCrary, 427 U.S. 160, 168–70 & n. 8 (1976)). The legislative history of the 1866 Act reflects Congress's intent to enact "sweeping legislation implementing the thirteenth amendment to abolish all the remaining badges and vestiges of the slavery system." Id. Accordingly, Section 1981 is grounded not only in the Fourteenth Amendment, but also in the Thirteenth Amendment to the Constitution. Runyon, 427 U.S. at 190.

Turning to defendants' objections, defendants ask the court to hold that an employer entity may be sued under Section 1981, but that individual employees accused of discrimination may not. Adopting defendants' interpretation would run counter to the purpose of Section 1981. The Civil Rights Act of 1866 was directed primarily at the mistreatment of African Americans by private individuals. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 427-28 (1968). Defendants' position would effectively require the court to rewrite the statute, an undertaking reserved for Congress, not the judiciary.

---

making and enforcement of a hotel reservation contract); Patterson v. Guttman, 225 F.3d 659 (6th Cir. 2000) (reversing summary judgment in favor of defendants, including individual employees, in a case involving alleged racial discrimination in real estate contracts).

11

Furthermore, the Third Circuit Court of Appeals has squarely addressed the issue of individual liability under Section 1981, particularly with respect to directors, officers, and employees of a corporation. The Court of Appeals has held that such individuals may be held liable under Section 1981 if they: (1) were "personally involved in the discrimination"; (2) "intentionally caused the [company] to infringe [upon] [the plaintiff]'s Section 1981 rights"; or (3) "authorized, directed, or participated in the alleged discriminatory conduct[.]" Al-Khazraji v. Saint Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986), aff'd, 481 U.S. 604 (1987).

In so holding, the Third Circuit distinguished between the liability of an employer and the liability of individual employees. "An individual, including a director, officer, or agent of a corporation, may be liable for injuries suffered by third parties because of his torts, regardless of whether he acted on his own account or on behalf of the corporation."[5] Id. "In particular, directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether

---

[5] The district court in that case held that the individual defendants were not the plaintiff's employers and thus could not be held liable under Section 1981; the Court of Appeals reversed. Al-Khazraji, 784 F.2d at 518.

12

the corporation may also be held liable." Id.  That is because liability under Section 1981 is "in the nature of a tort remedy."[6] Id.

Here, defendants miss the mark by invoking principles of agency law in the Section 1981 context.  The relevant inquiry in a Section 1981 case is not the defendant's position or relationship to the employer, but whether the individual was personally involved in discriminatory conduct.  Liability under Section 1981 attaches regardless of whether the individual defendant acted within or outside the scope of his employment so long as the individual was personally involved in the discrimination, intentionally caused the company to infringe upon the plaintiff's Section 1981 rights, or authorized, directed, or participated in the discriminatory conduct. See id.  Therefore, defendants' reliance on agency principles is misplaced.

---

[6] Section 1981 applies to scenarios beyond the employment context.  See H.R. Rep. No. 102-40(1), at 146 (1991) (Section 1981 "is not an employment statute . . . Rather, [it] is a broad civil rights statute [that] has been applied to numerous factual situations, including . . .  access to country clubs[.]").  Actually, "it was not until the early 1970s, a hundred years after enactment, that the courts judicially decided that the law even applied to private-sector employment discrimination." Id.; see Burns, 2024 WL 1660514, at *8–14; see also Shumate, 655 F. Supp. 2d at 532.

Additionally, nothing in the plain language of the statute evinces congressional intent to limit Section 1981 to the employment context. See Rotkiske v. Klemm, 589 U.S. 8, 14 (2019) ("It is a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts.") (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 94 (2012) (cleaned up)).

Defendants also argue that there is no privity of contract between the individual defendants and the plaintiffs, and therefore, liability cannot attach under Section 1981. (Doc. 134 at ECF p. 4). This argument is likewise unpersuasive because Section 1981 liability is in the nature of a tort remedy.[7] Al-Khazraji, 784 F.2d at 518.

Accordingly, defendants' objections to the magistrate judge's analysis of individual liability under Section 1981 will be overruled.

### 2. Individual Liability under Section 2000a

Defendants also object to the R&R's conclusion that Section 2000a permits individual liability. (Doc. 134 at ECF pp. 5-6). Defendants' objections largely restate arguments the magistrate judge already considered and properly rejected. These objections read more like a request for a mulligan than a demonstration of any error in the R&R's analysis.

Here, defendants argue that the individual defendants cannot comply with the remedies provided by the statute because relief under Section 2000a is limited to injunctive relief. (Id.) Put differently, defendants contend that because

---

[7] Defendants also argue that Defendants Bower and Polachek had no direct interaction with any plaintiff on the day in question. (Doc. 134 at ECF p. 4). This assertion highlights, rather than resolve, disputes of material fact. As the R&R correctly noted, the record does not establish whether Bower or Polachek retrieved, possessed, or presented a membership refund check to Ojo. (See Doc. 133 at 20). Accordingly, a reasonable factfinder could conclude that either Bower or Polachek was personally involved in procuring a refund check and thus participated in an attempt to terminate a contractual relationship.

14

Steven Chronister, Bower, and Polachek are merely employees, they cannot provide injunctive relief and therefore cannot be held liable under the statute. (Id.) This argument is not persuasive.

Section 2000a, part of Title II of the Civil Rights Act of 1964, provides that: "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."[8] 42 U.S.C. § 2000a.

To state a claim under Section 2000a, a plaintiff must allege that she: "(1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." Shumate, 655 F. Supp. 2d at 537 (citation omitted).

The inquiry under Section 2000a is substantially similar to the inquiry under Section 1981." Id. (citation omitted). Both statutory provisions protect against discrimination and require proof of discriminatory intent.

---

[8] Section 2000a "does not authorize money damages[.]" Hartman v. Bank of New York Mellon, 650 F. App'x 89, 92 (3d Cir. 2016) (citing Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)).

15

The plain language of the pertinent sections of Title II of the Civil Rights Act of 1964 does not evince Congress's intent to shield individual employees from liability.[9] See 42 U.S.C. § 2000a-3(a) ("Whenever any person has engaged . . . in any act or practice prohibited by section 2000a-2 . . . an application for a permanent or temporary injunction may be instituted by the person aggrieved [.]"). The court will not read limitations into a statute that Congress did not include. See Rotkiske, 589 U.S. at 14. Thus, Section 2000a permits suits for injunctive relief against individuals. Datto v. Harrison, 664 F. Supp. 2d 472, 492 (E.D. Pa. 2009).

With respect to the personal involvement of each individual defendant in the alleged discriminatory conduct, the record reveals genuine disputes of material fact, which preclude summary judgment.[10]

---

[9] Section 2000a also provides that:
> No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a-1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a-1 of this title.

42 U.S.C. § 2000a-2.

[10] Steven Chronister testified that he was part of the golf course management team and that he may have identified himself as an owner to the police. (Doc. 84-7 at 35-36). A review of his first 911 call indicates that he identified himself as the golf course manager, while Officer Eiker believed that Steven identified himself as an owner in person. (Doc. 83-8 at 22-23).

16

### 3. Defendant John Doe

Plaintiffs' submissions failed to identify Defendant John Doe.  Under the law, "Doe defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.' " Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998) (quoting Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 36 (E.D. Pa. 1990)).  A plaintiff must identify a Doe defendant because, if discovery yields no identities, fictitious parties must eventually be dismissed. See id. (citing Scheetz, 130 F.R.D. at 37).

Moreover, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21.  Put another way, "Rule 21 empowers courts to police the litigation's cast of characters." Avenatti v. Fox News Network LLC, 41 F.4th 125, 130 (3d Cir. 2022).

Where a plaintiff has had a reasonable opportunity to conduct discovery and ascertain the identity of a John Doe defendant but has failed to do so,

---

Jordan Chronister, inconsistently, described his father, Steven Chronister, at various times as a consultant and as "an employee for janitorial services." (Doc. 84-20 at 10, 54). Jordan, by contrast, testified that he was the owner and managing partner of Brew Vino. (Doc. 84-20 at 6:10-22).

Both Steven and Jordan Chronister also testified that Polachek served as the general manager of the golf course, which Polachek corroborated. (Doc. 84-20 at 6-7; Doc. 84-7 at 11:19-20).

The parties do not dispute that Bower was an employee.  At this juncture, however, neither party has pointed to evidence that would allow the court to determine whether any of these individuals possess the authority, or lack the authority, to provide the requested injunctive relief.

dismissal of the John Doe defendant is appropriate. Blakeslee v. Clinton Cnty., 336 F. App'x 248, 250 (3d Cir. 2009). Courts in the Third Circuit have used Rule 21 to exclude Doe parties from an action under appropriate circumstances, such as the failure to identify individuals during discovery. See King v. Mansfield Univ. of Pennsylvania, No. 1:11-CV-1112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014) (Brann, J.) (collecting cases). Moreover, at the summary judgment stage, claims against unidentified defendants cannot proceed to trial because the plaintiff cannot establish that a genuine dispute of material fact exists as to any particular individual. See Celotex Corp., 477 U.S. at 322–23.

At this stage, discovery has been closed, and plaintiffs have not identified Defendant John Doe by name. The court will thus dismiss all claims against that defendant under Rule 21.

## Conclusion

For the reasons set forth above, defendants' objections will be overruled, the R&R, (Doc. 133), will be adopted, and the defendants' motion for summary judgment, (Doc. 81), will be denied. The Doe defendant will be dismissed and this matter will be scheduled for a pre-trial conference. An appropriate order follows.

Date: 3/25/26

JUDGE JULIA K. MUNLEY
United States District Court

18